IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. |
| AUSTIN POWDER COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

**COMPLAINT**

The United States of America, by the authority of the Attorney General and through the undersigned attorneys, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency (U.S. EPA), files this Complaint against Austin Powder Company ("Austin Powder" or "Defendant") and alleges as follows:

**NATURE OF ACTION**

1. This is a civil action for injunctive relief and penalties brought against Austin Powder for violations of the Clean Water Act (CWA or "Act"), 33 U.S.C. §§ 1251-1388, at its Red Diamond Plant located in McArthur, Ohio ("the Facility"). The United States seeks: (1) injunctive relief to stop Defendant's ongoing violations of the CWA, including discharges of pollutants in violation of the terms and conditions of Defendant's National Pollutant Discharge Elimination System (NPDES) permit, and (2) civil penalties for Defendant's past and ongoing violations of the CWA at the Facility.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and CWA Section 309(b), 33 U.S.C. § 1319(b).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and CWA Section 309(b), 33 U.S.C. § 1319(b), because Defendant resides within this District and because the violations that constitute the basis of this Complaint occurred and are occurring at Defendant's Facility located in the District.

## NOTICE

3. The United States has provided notice of the commencement of this action to the State of Ohio as required by CWA Section 309(b), 33 U.S.C. § 1319(b).

## AUTHORITY

4. The United States Department of Justice has authority to bring this action on behalf of the Administrator of U.S. EPA pursuant to 28 U.S.C. §§ 516 and 519 and CWA Section 506, 33 U.S.C. § 1366.

## DEFENDANT

5. Defendant Austin Powder is an Ohio corporation with its headquarters in the State of Ohio.

6. Defendant owns and operates a manufacturing facility located at 430 Powder Plant Road in McArthur, Ohio.

7. Defendant is a "person" within the meaning of CWA Sections 311(a)(7) and 502(5), 33 U.S.C. §§ 1321(a)(7) and 1362(5), and 40 C.F.R. § 122.2.

## CLEAN WATER ACT

8. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

### National Pollutant Discharge Elimination System

9. To accomplish this goal, CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from a point source to the waters of the United States except as authorized by, and in compliance with, certain enumerated Sections of the CWA, including CWA Section 402, 33 U.S.C. § 1342.

10. In order to achieve its objective, the CWA includes, *inter alia*, the NPDES provisions, which allow pollutants to be discharged to navigable waters only in compliance with an NPDES permit issued by U.S. EPA or an authorized state pursuant to CWA Section 402. 33 U.S.C. § 1342.

11. CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include an "individual, corporation, partnership, [or] association."

12. CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

13. CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" as "spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

14. CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "waters of the United States, including territorial seas."

15. CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including, but not limited to any pipe, ditch, channel, tunnel, conduit, well [or] discrete fissure . . . from which pollutants are or may be discharged."

16. CWA Section 402(a), 33 U.S.C. § 1342(a), provides that the permit-issuing authority may issue a NPDES permit that authorizes the discharge of any pollutant into navigable waters of the United States, upon the condition that such discharge will meet certain specific requirements of the CWA or such other conditions as U.S. EPA determines necessary to carry out the provisions of the CWA. In addition, U.S. EPA may prescribe conditions pertaining to test procedures, data and information collection, reporting, and such other requirements as deemed appropriate by U.S. EPA.

17. NPDES permits establish "effluent limitations," which are defined as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from the point sources into navigable waters." 33 U.S.C. § 1362(11).

18. Effluent limitations can be numeric effluent limitations, which prohibit a facility from exceeding concentration or mass-based limits on pollutants in a discharge into receiving waterbodies.

19. Pollutants are subject to different types of numeric effluent limitations, such as maximum, minimum, daily maximum, 7-day average, and monthly average. A pollutant may be subject to multiple limits, such as a daily and a 7-day or monthly average limit.

20. Effluent limitations can also be narrative standards, which prohibit a facility from causing unacceptable impacts onto and into receiving waterbodies.

21. CWA Section 402(b), 33 U.S.C. § 1342(b), provides that a state may establish and administer its own permit program, and, after U.S. EPA authorizes the state's program, it may also issue NPDES permits. The State of Ohio requested approval from U.S. EPA to administer its own permit program for discharges into navigable waters within Ohio, and such approval was granted by U.S. EPA on March 11, 1974, 39 Fed. Reg. 26,061 (July 16, 1974).

## Issuance of Administrative Orders Under the Clean Water Act

22. CWA Section 309(a)(3), 33 U.S.C. § 1319(a)(3), provides that whenever the Administrator finds a person in violation of CWA Section 301(a), 33 U.S.C. § 1311(a), he/she may issue an order requiring that person to comply with the provisions of the CWA. Violation of an order issued under CWA Section 309(a)(3), 33 U.S.C. § 1319(a)(3), constitutes a violation of CWA Section 301(a), 33 U.S.C. §§ 1311(a)

## CWA Enforcement Authority

23. CWA Section 309(b), 33 U.S.C. § 1319(b), provides that U.S. EPA is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction for any violation actionable under CWA Section 309(a), 33 U.S.C. § 1319(a), including violation of any term or condition of an NPDES permit.

24. CWA Section 309(d), 33 U.S.C. § 1319(d), as amended by the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, the Federal Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, provides that any person who violates CWA Section 301, 33 U.S.C. § 1311, is subject to a civil penalty of up to $37,500 per day for each violation occurring between January 12, 2009 and November 2, 2015, and up to $59,973 per day for each violation occurring on or after November 3, 2015.

## FACTUAL BACKGROUND

### The Red Diamond Plant

25. Austin Powder owns and operates the Facility, at which it produces, *inter alia,* bulk and packaged emulsion explosives, pentaerythritol tetranitrate (PETN), cast boosters, and detonation cords for mining operations. Defendant uses many explosive materials in manufacturing its products, including PETN, cyclotrimethylenetrinitramine (RDX), 2,4,6-trinitrotoluene (TNT), Octahydro-1,3,5,7-tetranitro-1,3,5,7-tetrazocine (HMX), and ammonium nitrate/fuel oil mixtures (ANFO).

26. Defendant owns and operates five on-site wastewater treatment plants (WWTPs) that treat sanitary wastewater and/or process wastewater associated with explosives production.

27. The wastewaters from the Facility contain "pollutants" as defined by 33 U.S.C. § 1362(6), including, but not limited to, total suspended solids (TSS), oil and grease, *E. coli*, five-day Carbonaceous Biochemical Oxygen Demand ($CBOD_5$), chemical oxygen demand (COD), and Ammonia Nitrogen ($NH_3$).

28. During times relevant to this Complaint, Austin Powder discharged wastewaters containing "pollutants," within the meaning of 33 U.S.C. §1362, from its WWTP outfalls and into unnamed tributaries of Raccoon Creek and Elk Fork.

29. The outfalls that discharge from the Facility into the unnamed tributaries of Raccoon Creek and Elk Fork are "point sources" within the meaning of the CWA. 33 U.S.C. § 1362(14).

30. The discharges described in Paragraph 28 are "discharges of [] pollutant[s]," within the meaning of CWA Section 502(12), 33 U.S.C. § 1362(12). The unnamed tributaries of

6

Raccoon Creek and Elk Fork Creek are "navigable waters" within the meaning of CWA Section 502, 33 U.S.C. § 1362.

**NPDES Permit**

31. On October 29, 2014, Ohio EPA issued NPDES permit No. OH0006173 (the "NPDES Permit") relating to the Facility, pursuant to CWA Section 402, 33 U.S.C. § 1342. The NPDES Permit became effective on December 1, 2014 and remained in effect until March 1, 2020, when an updated NPDES Permit became effective.

32. The NPDES Permit authorizes Austin Powder's Red Diamond Plant to discharge pollutants via eight outfalls (Outfalls 001, 003, 004, 005, 006, 007, 010, and 011), one internal outfall (Outfall 601), and via a sludge monitoring outfall if sludge is applied to land (Outfall 581). The NPDES Permit also requires the Facility to monitor within an unnamed tributary of Elk Fork, upstream of Outfall 011, beyond any influence of the discharge from Outfall 011, twice a year (Outfall 801).

33. At times relevant to this Complaint, Defendant was authorized to discharge pollutants from the Facility only in compliance with the specific terms and conditions of the NPDES Permit. *See* NPDES Permit Part III, Para. 15.

34. The NPDES Permit includes Monitoring Requirements that require Austin Powder to sample and test its effluent and monitor its compliance with the NPDES Permit's conditions and applicable regulations, according to specific procedures. *Id.* at Part I. The NPDES Permit also requires Defendant to file with Ohio EPA a certified Discharge Monitoring Report (DMR) of the results of monitoring and Noncompliance Reports, as appropriate. *Id.* at Para. 12.

35. From January 2013 to the present, Defendant submitted certified DMRs to Ohio EPA that reported hundreds of discharges of pollutants from the Facility that exceeded its permitted effluent limitations for the following pollutants: COD, TSS, oil and grease, *E. coli*, and $CBOD_5$.

36. NPDES Permit Part 3, Para. 5 requires all samples and measurements of the discharge to be representative of the volume and nature of the discharge, and that such samples be analyzed using approved test procedures under 40 C.F.R. Part 136.

### Stormwater Permits

37. Ohio EPA also issued Austin Powder a general permit to discharge stormwater associated with industrial activities from the Facility (General Permit OHR000005), which was replaced with a new general permit on June 1, 2017 (General Permit OHR000006) (collectively, the "Stormwater Permits").

38. In accordance with the Stormwater Permits, Austin Powder developed a Stormwater Pollution Prevention Plan (SWPPP). In the SWPPP, the Facility identified four stormwater outfalls on its property that only discharge stormwater (Outfalls 5001, 5002, 5003 and 5004).

### Environmental Harm

39. Elk Fork and certain unnamed tributaries receive discharges from Outfalls 003, 006, 007, 010, 011, and stormwater outfalls 5002, 5003, and 5004. The Ohio Environmental Protection Agency's ("Ohio EPA") Watershed Assessment Unit has determined that Elk Fork is impaired for coarse sediment, combined biota/habit bioassessments, total dissolved solids, total ammonia, and bacteria.

40. Raccoon Creek and certain unnamed tributaries receive discharges from Outfall 001 and stormwater outfall 5001.  Ohio EPA's Watershed Assessment Unit has determined that Raccoon Creek is impaired for coarse sediment, combined biota/habit bioassessments, and bacteria.

**Enforcement History**

41. Ohio EPA conducted a CWA inspection of the Facility on December 11, 2015. Ohio EPA issued Notices of Violation (NOV) to Defendant on July 15, 2015 and March 23, 2016 regarding deficiencies and/or permit violations observed during the inspection or self-reported by Austin Powder.

42. U.S. EPA conducted a CWA inspection of the facility from October 24 to October 27, 2016.  U.S. EPA issued an inspection report to Defendant on August 28, 2017, identifying regarding deficiencies and/or permit violations observed during the inspection or self-reported by Austin Powder.

43. Ohio EPA conducted a reconnaissance of the Facility on March 23, 2017.  Ohio EPA issued NOVs to Defendant on April 21, 2017 and November 14, 2017 regarding deficiencies and/or permit violations observed during the reconnaissance or self-reported by Austin Powder.

44. U.S. EPA determined that Defendant was in significant non-compliance with its NPDES Permit and Stormwater Permits due to effluent limit exceedances, the presence of multiple discharge outfalls at two of the Facility's WWTPs, the lack of proper compliance sampling at multiple outfalls, laboratory/sampling deficiencies, and SWPPP deficiencies.

45. U.S. EPA finalized an Administrative Order on Consent (AOC) with Austin Powder on April 27, 2018, requiring Austin Powder to come into compliance with its permits

and the CWA. The Order enumerated a number of steps Austin Powder was required to comply with to resolve the alleged non-compliance. The AOC required that Austin Powder develop and submit various plans to U.S. EPA for approval to address and correct its noncompliance with its permits and the CWA. The AOC was issued pursuant to CWA Section 309(a), 33 U.S.C. § 13l9(a)(3).

46. Austin Powder completed many of its obligations under the AOC, but failed to comply with other requirements. In particular, Austin Powder failed to submit an acceptable WWTP Compliance Plan.

<strong>FIRST CLAIM FOR RELIEF<br>(Discharges of Pollutants in Violation of the NPDES Permit)</strong>

47. Plaintiff realleges and incorporates by reference Paragraphs 1 through 46, as if fully set forth herein.

48. The NPDES Permit contains effluent limitations for certain enumerated pollutants consisting of concentration limits, loading limits, or both.

49. From January 2013 through the present, Austin Powder submitted certified discharge monitoring reports to Ohio EPA identifying hundreds of discharges from its outfalls of the following pollutants in excess of its NPDES Permit effluent limitations: COD, TSS, pH, $NH_3$, total oil and grease, *E. coli*, and $CBOD_5$.

50. Pursuant to the NPDES Permits and CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a), each exceedance of an NPDES Permit effluent limitation is a violation of the NPDES Permit and CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a).

51. Unless restrained by an order of this Court, the violations of the CWA alleged in this First Claim for Relief will continue.

52. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to $37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

**SECOND CLAIM FOR RELIEF**
**(Failure to Comply with Laboratory and Sampling Requirements of NPDES Permits)**

53. Plaintiff realleges and incorporates by reference Paragraphs 1 through 46, as if fully set forth herein.

54. The NPDES Permit requires composite sampling to be conducted at Outfall 001 for certain enumerated pollutants. NPDES Permit Part I.A. The NPDES Permit states that "Composite Sampling shall be comprised of a series of grab samples collected over a 24-hour period and proportionate in volume to the wastewater flow rate at the time of sampling." NPDES Permit Part II.E.

55. During U.S. EPA's October 2016 inspection of the Facility, U.S. EPA observed that Austin Powder was using a composite sampler that would obtain a constant sample volume every 20 minutes over a 24-hour timeframe, regardless of wastewater flow ("time composite sampler"). The Facility's NPDES permit specifies that composite sampling must be proportionate in volume to flow rate. A simple time composite sample is not proportionate in volume to flow.

56. The NPDES Permit requires quarterly grab sampling for COD to be conducted at Internal Monitoring Station 601. NPDES Permit Part I,A.8. (pg. 13).

57. From at least the 3rd Quarter of 2013 through the 4th Quarter of 2016, Austin Powder did not report quarterly grab sampling for COD at Internal Monitoring Station 601.

58. The NPDES Permit requires that test procedures for the analysis of pollutants shall conform to regulation 40 C.F.R. Part 136. NPDES Permit Part III.5.

59. Table II of 40 C.F.R. Part 136 requires that samples tested for COD, $NH_3$, Nitrate plus Nitrite, and $CBOD_5$ be preserved prior to sample analysis to less than 6º Celsius and samples tested for *E. coli* be preserved prior to sample analysis to less than 10º Celsius.

60. During U.S. EPA's October 2016 inspection of the Facility, U.S. EPA observed that the Outfall 001 composite sampler did not have a refrigerated sample container, but instead Austin Powder simply kept samples in a cooler with ice manually added by Facility employees. Austin Powder did not have a thermometer in the sample cooler to ensure that the sample was kept at the corresponding temperature requirements for all of the sampled pollutant parameters.

61. Table II of 40 C.F.R. Part 136 provides that oil/grease samples shall be collected in glass containers.

62. From at least May 2013 through August 2018, Austin Powder used plastic containers for oil/grease sampling.

63. Each failure by Austin Powder to collect samples at the frequency and/or in the method required by the NPDES Permit is a violation of the NPDES Permit and CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a).

64. Unless restrained by an order of this Court, the violations of the CWA alleged in this Second Claim for Relief will continue.

65. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R.

§ 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to $37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

**THIRD CLAIM FOR RELIEF**
**(Failure to Maintain and Operate the WWTPs in**
**Good Working Order and as Efficiently as Possible)**

66. Plaintiff realleges and incorporates by reference Paragraphs 1 to 46, as if fully set forth herein.

67. The NPDES Permit requires that the "permittee shall maintain in good working order and operate as efficiently as possible all treatment or control facilities or systems installed or used by the permittee necessary to achieve compliance with the terms and conditions of this permit." NPDES Permit Part III.3.A.

68. During U.S. EPA's October 2016 inspection of the Facility, U.S. EPA learned that Austin Powder was removing waste-activated sludge from its WWTPs on an annual basis. Removal of waste activated sludge annually is insufficiently frequent and may contribute to effluent limit exceedances.

69. Defendant's removal of waste activated sludge from its WWTPs on an annual basis constitutes a violation of the NPDES Permits requirement that the Facility operate all treatment or control facilities or systems as efficiently as possible. NPDES Permit Part III.3.A.

70. Austin Powder's removal of waste activated sludge from its WWTPs on only an annual basis is a violation of the NPDES Permit and CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a).

71. Unless restrained by an order of this Court, the violations of the CWA alleged in this Third Claim for Relief will continue.

72. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to $37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

## FOURTH CLAIM FOR RELIEF
**(Failure to Develop, Maintain, and Implement a Stormwater Pollution Prevention Plan)**

73. Plaintiff realleges and incorporates by reference Paragraphs 1 through 46, as if fully set forth herein.

74. Section 5 of Defendant's Stormwater Permits requires preparation of a SWPPP and enumerates certain mandatory elements for the SWPPP. Stormwater Permits Section 5.

75. Defendant failed to develop, maintain, and implement an adequate SWPPP for the Facility, in violation of its Stormwater Permits and CWA Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a), including by:

   a. failing to identify locations of SWPPP outfalls, impaired waters, and industrial areas (Stormwater Permits ¶ 5.1.3);

   b. failing to identify SWPPP team members (Stormwater Permits ¶ 5.1.1); and

   c. failing to include a complete description of erosion and sediment controls (Stormwater Permits ¶ 5.1.4).

76. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to

$37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

## FIFTH CLAIM FOR RELIEF
### (Failure to Comply With Administrative Order on Consent)

77. Plaintiff realleges and incorporates by reference Paragraphs 1 to 46, as if fully set forth herein.

78. On April 27, 2018, U.S. EPA issued Administrative Order on Consent No. OH0006173 (the "AOC") to Austin Powder to address alleged noncompliance with the NPDES Permit, the Stormwater Permits, and the CWA at the Facility.

79. The AOC was issued under CWA Section 309(a), 33 U.S.C. § 1319(a)(3). CWA Section 309(a)(3) states that whenever the Administrator finds a person in violation of CWA Section 301(a), 33 U.S.C. § 131l(a), he/she may issue an order requiring that person to comply with the provisions of the CWA.

80. The AOC required, *inter alia,* that Austin Powder submit WWTP Compliance Plans for U.S. EPA approval to address noncompliance with the NPDES Permit and the CWA, including noncompliance specified in the AOC, related to the Outfall 010 WWTP and Outfall 011 WWTP at the Facility. *See* AOC ¶¶ 80.g and 80.h.

81. The AOC required that the WWTP Compliance Plans describe the actions Austin Powder would undertake to address and correct alleged noncompliance at each WWTP. *See id.* at ¶ 80.

82. The AOC required that the WWTP Compliance Plans include an implementation schedule for each component of the plan, with a final completion date of no later than May 31, 2021. *See id.* at ¶ 81.

83. Austin Powder failed to comply with AOC Paragraphs 80-81, by failing to submit an adequate WWTP Compliance Plan detailing how it would come into compliance with its NDPES Permit at Outfall 010 WWTP and Outfall 011 WWTP, despite several attempts to do so.

84. Defendant's failure to comply with the AOC constitutes a violation of CWA Section 301(a), 33 U.S.C. §§ 131l(a).  *See also* AOC ¶ 110.

85. Unless restrained by an order of this Court, the violations of the CWA alleged in this Fifth Claim for Relief will continue.

86. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to $37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

### SIXTH CLAIM FOR RELIEF
### (Discharges from Unpermitted Point Sources)

87. Plaintiff realleges and incorporates by reference Paragraphs 1 to 46, as if fully set forth herein.

88. CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants, except in compliance with, *inter alia*, the NPDES permitting provisions of 33 U.S.C. § 1342.

89. Austin Powder's Outfall 003 WWTP discharges pollutants through two effluent discharge pipes.  Austin Powder's NPDES Permit provided only a single permitted point source for Outfall 003 WWTP until July 2018.

90. Austin Powder's Outfall 005 WWTP discharges pollutants through two effluent discharge pipes.  Austin Powder's NPDES Permit provided only a single permitted point source for Outfall 005 WWTP until June 2019.

91. Both Outfall 003 WWTP and Outfall 005 WWTP discharged pollutants through an unpermitted point source in violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

92. As provided in CWA Section 309(d), 33 U.S.C. § 1319(d), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 3701, and 40 C.F.R. § 19.4, each of the violations alleged in this claim subjects Defendant to civil penalties of up to $37,500 for each violation occurring on or after January 19, 2009 through November 2, 2015, and $59,973 for each violation occurring after November 2, 2015.

## PRAYER FOR RELIEF

Wherefore, based on the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin Austin Powder from operating the Facility except in accordance with the requirements of CWA Section 301, 33 U.S.C. § 1311, and Defendant's NPDES Permit and Stormwater Permits;

2. Order Austin Powder to take all steps necessary or appropriate to ensure compliance with the foregoing laws, regulations and permits and to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CWA alleged herein;

3. Assess a civil penalty against Austin Powder in an amount up to $37,500 per day for each violation of the CWA occurring between January 13, 2009 and November 2, 2015, and up to $59,973 per day for each violation occurring on or after November 3, 2015, with each violation on each day in which a violation occurs constituting a separate violation;

4. Award the United States its costs in this action; and

5. Grant such other relief as the Court deems just and proper.

17

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

_/s/_, Trial Attorney
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
(202) 514-4432

KENNETH L. PARKER
United States Attorney
Southern District of Ohio
MATTHEW HORWITZ
Civil Chief
Southern District of Ohio
221 E. Fourth Street, Suite 400
Cincinnati, OH  45202
(513) 684-6823

OF COUNSEL:

SUSAN PROUT
Associate Regional Counsel
EPA Region 5
77 West Jackson Blvd.
Chicago, IL  60604-3590
(312) 353-1029

GRACIELA GARCIA PENDLETON
Attorney-Advisor
U.S. Environmental Protection Agency
OECA – OCE – Water Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
(202) 564-2588