IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AUSTIN POWDER COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 2:22-cv-1645-JLG-EPD <br> Hon. James L. Graham |

**UNITED STATES' UNOPPOSED MOTION**
**FOR ENTRY OF CONSENT DECREE**

The United States seeks entry of a proposed Consent Decree, lodged with this Court on March 16, 2022, resolving claims against Austin Powder Company ("Defendant") pursuant to Clean Water Act (CWA) Sections 301(a) and 309(a), 33 U.S.C. §§ 1311(a) and 1319(a), for injunctive relief and civil penalties for violations at Defendant's Red Diamond Plant in McArthur, Ohio. During the 30-day public comment period, the United States did not receive any comments. The United States continues to believe that the proposed settlement is fair, reasonable, and consistent with the purposes of the CWA. Austin Powder has consented to entry of the Consent Decree. Dkt. 2-1 at ¶ 90. The United States, therefore, requests that the Court enter the proposed Consent Decree.

**Procedural History**

On March 16, 2022, the United States, on behalf of the United States Environmental Protection Agency ("U.S. EPA") filed a Complaint asserting six claims pursuant to the CWA for

the following alleged violations: (i) discharges of pollutants in violation of Austin Powder's National Pollution Discharge Elimination System (NPDES) permit; (ii) failure to comply with laboratory and sampling requirements of the NPDES permit; (iii) failure to maintain and operate wastewater treatment plants in good working order; (iv) failure to develop, maintain, and implement an adequate stormwater pollution prevention plan ("SWPPP"); (v) failure to comply with an April 2018 Administrative Order on Consent (AOC); and (vi) discharges from unpermitted point sources (Dkt. 1).

That same day, the United States filed a *Notice of Lodging of Consent Decree* (Dkt. 2) and lodged with the Court a proposed Consent Decree (Dkt. 2-1) between the United States and Austin Powder to resolve the allegations in the Complaint, pending public notice and comment on the Consent Decree. In accordance with 28 C.F.R. Part 50.7, on March 22, 2022, the U.S. Department of Justice ("DOJ") published a notice in the *Federal Register*, advising the public of the lodging of the proposed Consent Decree and inviting the public to comment on it during a 30-day period commencing with the date of publication of the notice. *See* 87 Fed. Reg. 16231-32. The United States did not receive any comments during the public comment period.

## Factual Background

### A. The Facility

The Facility, known as the Red Diamond Plant, is an explosives manufacturing facility owned and operated by Austin Powder in McArthur, Ohio, a mostly rural community located approximately 80 miles southeast of Columbus. The Facility began operations in 1930, manufacturing "Red Diamond" dynamite. Austin Powder no longer produces dynamite at the Facility, but continues to manufacture emulsion explosives, cast boosters, and detonation cords

there. The Facility currently discharges through Outfalls 001, 003, 006, 010, and 011 – associated with five on-site wastewater treatment plants that treat process wastewater, sanitary wastewater, or both. Pursuant to its NPDES Permit, Austin Powder is authorized to discharge from these outfalls into an unnamed tributary of Raccoon Creek (Outfall 001) and an unnamed tributary of Elk Fork (Outfalls 003, 006, 010, and 011). Elk Fork flows into Raccoon Creek, which flows over 100 miles to the Ohio River. The Facility is also subject to a General Permit, which regulates discharges through four stormwater outfalls ("Stormwater Permit").

Between 2015 and 2017, the Ohio Environmental Protection Agency ("Ohio EPA") conducted an inspection and a reconnaissance of the Facility, leading to issuance of four notices of violation ("NOVs") to Austin Powder. The NOVs alleged permit exceedances at various outfalls, failures to comply with sampling requirements of the NPDES permit, and noncompliance with the Facility's Stormwater Permit. U.S. EPA conducted a CWA inspection of the Facility from October 24-27, 2016, and reviewed the company's self-reported noncompliance with the NPDES permit. U.S. EPA determined that Austin Powder was in noncompliance due to NPDES permit limit exceedances, lack of proper compliance sampling at multiple outfalls, sampling and testing deficiencies, and deficiencies in complying with its Stormwater Permit.

In April 2018, U.S. EPA and Austin Powder entered into an AOC, which required, among other things, that Austin Powder develop a plan to address its exceedances of permit effluent limits at the Facility. The AOC also required that the company develop a laboratory/compliance testing plan to address sampling and testing deficiencies, develop improved procedures to ensure it does not violate any construction stormwater regulations, and

revise and resubmit the Facility's SWPPP to address the deficiencies noted in U.S. EPA's inspection report and Ohio EPA's NOVs. The AOC did not address civil penalties for the alleged violations. Austin Powder complied with many of the AOC provisions, including addressing SWPPP deficiencies and improving laboratory and compliance testing procedures. Austin Powder's efforts in developing a compliance plan to address NPDES permit exceedances were inadequate, however, leading to DOJ's involvement in this litigation.

    B.  **Negotiation History and Austin Powder's Compliance Actions**

The Parties commenced negotiations relating to the current matter in late 2019. Since that time, Austin Powder has taken significant steps to come into compliance with the CWA and these steps have yielded positive results. Early on in the negotiations, the company retained outside expertise to assist in developing recommendations for corrective actions needed to come into compliance with its NPDES permit and those recommendations have been incorporated into subsequent deliverables. Appendix A to the Consent Decree details compliance-related actions taken by Austin Powder to date, which include installation of new UV disinfection systems at Outfalls 001 and 010, installation of septic systems at Outfalls 003 and 006, decommissioning of several outfalls, and implementation of various mechanical upgrades at Outfall 011. Austin Powder has already completed the treatability study required by the proposed Consent Decree and submitted a proposed compliance plan for Outfall 011.

**Proposed Consent Decree**

    1.  **Injunctive Relief.**

The proposed Consent Decree would require that Austin Powder implement comprehensive injunctive relief designed to bring the company into compliance with its NPDES

permit at its wastewater treatment plants ("WWTPs") and ensure future compliance. The Consent Decree would require that Austin Powder (i) complete a treatability study to assess the effectiveness of remedial measures previously proposed by Austin Powder at Outfall 011, the worst performing WWTP outfall (CD ¶ 16); (ii) prepare a compliance plan to identify additional remedial measures needed to come into and maintain compliance with NPDES permit requirements at the Outfall 011 WWTP (CD ¶ 17); (iii) implement the Outfall 011 Compliance Plan as approved by U.S. EPA (CD ¶ 17.c.); and (iv) monitor performance at all outfalls following completion of remedial measures (CD ¶ 21). If U.S. EPA determines after reviewing the monitoring plan report, required following such monitoring, that Austin Powder has not come into compliance with the NPDES Permit, Austin Powder will be required to prepare and implement a Supplemental Compliance Plan (CD ¶ 23).

2.      **Civil Penalty**

The proposed Consent Decree includes the requirement that Austin Powder pay a civil penalty of $2.3 million, with interest accruing from the Date of Lodging (CD ¶ 9). The civil penalty was calculated consistent with the *Clean Air Act Stationary Source Penalty Policy*, dated April 25, 1991.[1] It is appropriate that the company should pay a substantial penalty given the seriousness of the violations and the company's history of noncompliance with the NPDES permit and the AOC. The penalty, however, also takes into account the company's significant cooperation during the negotiations, particularly its implementation of substantial and concrete interim measures to address noncompliance.

---

[1] U.S. EPA's *Clean Air Act Stationary Source Civil Penalty Policy* is available at: http://www2.epa.gov/enforcement/clean-air-act-stationary-source-civil-penalty-policy-october-25-1991.

**Standard of Review**

The "criteria to be applied" when a court determines whether to approve a proposed consent decree "are whether the decree is 'fair, adequate, and reasonable, as well as consistent with the public interest.'" *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010), *quoting United States v. County of Muskegon*, 298 F.3d 569, 580-81 (6th Cir. 2002); *see also United States v. George A. Whiting Paper*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with [the environmental statute's] goals, and substantively and procedurally fair."). This standard of review is consistent with the standard of review that pertains to consent decrees generally. *See Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980) (settlements should be "fair, reasonable, and adequate"); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985).

This limited standard of review reflects a public policy that strongly favors settlements of disputes without protracted litigation. *See Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Settlements conserve the resources of the courts, the litigants, and the taxpayers and "should . . . be upheld whenever equitable and policy considerations so permit." *Id*. This is particularly true in disputes involving environmental violations "where voluntary compliance by the parties . . . will contribute significantly toward ultimate achievement of statutory goals." *Kelly v. Thomas Solvent Co.*, 717 F. Supp. 507, 516 (W.D. Mich. 1989) (citations omitted).

Approval of a settlement is committed to the informed discretion of the trial court. *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Donovan v. Robbins*, 752 F.2d 1170, 1176-77 (7th Cir. 1985); *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir.

1984). Courts, however, usually exercise this discretion in a limited and deferential manner. For example, the Court does not have the power to modify a settlement; it may only accept or reject the terms to which the parties have agreed. *See United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991); *Jones & Laughlin Steel Corp.*, 804 F.2d at 351. Further, in reviewing a consent decree, "the controlling criteria is not what might have been agreed upon . . . nor what the district court believes might have been the optimal settlement." *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989) (citations omitted), *aff'd,* 899 F.2d 79, 84 (1st Cir. 1990) (court determines "not whether the settlement is one which the Court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute"); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 630 (9th Cir. 1982); *Thomas Solvent Co.*, 717 F. Supp. at 515.

  Finally, the balancing of competing interests affected by a proposed consent decree to which the United States is a party "must be left, in the first instance, to the discretion of the Attorney General." *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981). Judicial deference to a settlement is "particularly strong" when that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA[,] which enjoys substantial expertise in the environmental field." *Lexington-Fayette*, 591 F.3d at 490, *quoting Akzo Coatings*, 949 F.2d at 1436; *see also George A. Whiting Paper, 644 F.3d at 372.* Thus, where an agency committed to the furtherance of the public interest has negotiated an agreement, there is a presumption of validity.

**Argument**

A.    **The Consent Decree Is Fair, Reasonable, and Consistent with Statutory Goals**

    1.    **The Consent Decree Is Fair.**

In determining whether a proposed settlement is fair, a court need only ascertain whether the terms of the proposed consent decree reflect a reasonable compromise of the litigation. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 747 (9th Cir. 1995). As part of this analysis, courts consider "the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." *United States v. Hooker Chem. & Plastics Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985), *aff'd*, 776 F.2d 410 (2d Cir. 1985). In this case, the settlement embodied in the Consent Decree is the result of good-faith, arms-length bargaining between attorneys for the United States and Austin Powder. After a careful analysis of the strengths and risks of litigation, the Parties arrived at a settlement that facilitates Austin Powder's compliance with its CWA obligations and payment of an appropriate civil penalty. In exchange, Austin Powder obtains resolution of the matter and avoids costly litigation of the governments' claims.

The fairness of the proposed Consent Decree is also inherent in the process by which the settlement was reached. The Parties engaged in extensive negotiations over a number of years, exchanging several letters and consent decree drafts. Throughout these negotiations, Austin Powder was represented by experienced counsel well-versed in environmental law and procedure.

The proposed Consent Decree reflects the Parties' careful and informed assessment of the relative merits of each other's claims and defenses, while taking into consideration the costs and

risks associated with litigating what would be a relatively complex case. Avoiding litigation benefits all Parties and spares the resources of the Court. *See Cannons*, 899 F.2d at 90 ("all too often, litigation . . . can squander valuable resources"). Not only the Parties, but also the public gains from the "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

The settlement also embodies a measure of compromise on the part of both sides. As with any fair settlement, the Parties benefit from the immediate resolution of the asserted claims and defenses, while foregoing the opportunity to seek unmitigated victory. *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Officers for Justice*, 688 F.2d at 624 ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation").

### 2. The Consent Decree Is Reasonable.

The "reasonableness" of a Consent Decree may be determined through consideration of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402-03 (D. Col. 1994). When determining whether a settlement is reasonable, "the decree's likely efficaciousness as a vehicle for cleansing the environment is of cardinal importance." *Cannons*, 899 F.2d at 89. The proposed Consent Decree is more than technically adequate in that it contains specific, tailored relief that addresses the violations alleged in the Complaint, imposes additional steps to reduce the potential for future violations, and will result in the implementation of such actions in a far shorter time than if the Parties had litigated the action.

**3.     The Consent Decree Is Consistent with Relevant Statutory Goals.**

Another role of a court reviewing an environmental settlement submitted by the United States is to determine "whether the Decree comports with the goals of Congress." *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987).  The primary objective of the CWA is to protect the public health and welfare and the environment.  The Consent Decree furthers these statutory goals by addressing, without litigation delays or costs, the identified violations and taking steps to ensure improved compliance with the CWA in the future.

## Conclusion

The settlement embodied in the Consent Decree constitutes the United States' best efforts to resolve this case fully and fairly in a manner consistent with the interests of the public. Having received no public comments, the United States continues to believe that the proposed Consent Decree is fair, reasonable, consistent with the purposes of the CWA, and in the public interest.

THEREFORE, the United States respectfully requests that the Court enter the proposed Consent Decree.

//

//

//

//

//

//

//

Dated: April 29, 2022.

        Respectfully submitted,

        TODD KIM
        Assistant Attorney General
        Environment and Natural Resources Division
        U.S. Department of Justice


        __/s Jeffrey A. Spector_____, Trial Attorney
        JEFFREY A. SPECTOR
        Senior Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        U.S. Department of Justice
        P.O. Box 7611
        Washington, DC  20044-7611
        (202) 514-4432

        KENNETH L. PARKER
        United States Attorney
        Southern District of Ohio
        MATTHEW HORWITZ
        Civil Chief
        Southern District of Ohio
        221 E. Fourth Street, Suite 400
        Cincinnati, OH  45202
        (513) 684-6823

OF COUNSEL:

SUSAN PROUT
Associate Regional Counsel
EPA Region 5
77 West Jackson Blvd.
Chicago, IL  60604-3590
(312) 353-1029

GRACIELA GARCIA PENDLETON
Attorney-Advisor
U.S. Environmental Protection Agency
OECA – OCE – Water Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460
(202) 564-2588

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing *United States of America's Unopposed Motion to Enter Consent Decree* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. mail or email. Parties may access this filing through the Court's system.

| 4/29/22 | s/ Jeffrey A. Spector |
|---|---|
| Date | Jeffrey A. Spector |